George Z. Goldberg, OSB No. 182452
E-mail: pleadings@goldbergloren.com
Matthew Kaufmann, OSB No. 212749
E-mail: mkaufmann@goldbergloren.com
Law Offices of Goldberg & Loren, P.A.
6500 S. Macadam Ave., Suite 380
Portland, OR 97239
Phone: 800-719-1617
Fax: 888-272-8822
Attorneys for Plaintiffs Jane "KL" Doe,
Jane Doe and John Doe

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| JANE DOE and JOHN DOE individually and as parents and Guardian's Ad Litem for JANE "KL" DOE, a minor,<br><br>Plaintiffs,<br><br>v.<br><br>NIKE, INC., an Oregon corporation, and NATIONAL SCHOLASTIC ATHLETICS FOUNDATION, INC., a Massachusetts non-profit corporation,<br><br>Defendants. | Case No.<br><br>**PLAINTIFF'S COMPLAINT** |

**COMPLAINT FOR DAMAGES**

**(Jury Trial Demanded)**

PLAINTIFFS JANE DOE and JOHN DOE individually and as parents and as Guardian's Ad Litem for JANE "KL" DOE, a minor, by and through the undersigned counsel, allege as follows:

## INTRODUCTION

1. Plaintiff, Jane "KL" Doe, is a nationally recognized high school student athlete who participated in the Nike Elite Program for track and field operated and sponsored by Nike, Inc. (Hereinafter "Nike") and the National Scholastic Athletics Foundation, Inc. (Hereinafter "NSAF").

2. According to the Nike Elite Program website, https://nikeelite.runnerspace.com/ this elite program run by Nike and NSAF, provides guidance, mentorship, equipment, opportunity and community to elite high school athletes.

3. Being a part of the Nike Elite Program provides elite high school athletes with access to training, events, and opportunities that would not otherwise be available to them.

4. While attending a Nike Elite Program in Beaverton, Oregon, at the Nike headquarters on the weekend of July 4, 2026, at the invitation of Nike and NSAF, Jane "KL" Doe and other Nike Elite Program participants socialized together. Within that group was a male student athlete participating in the camp ("Assailant"). As discussed further below, Assailant had behavioral problems and Nike and NSAF staff were aware of these problems, but no corrective action was taken.

5. This behavioral problem culminated with the Assailant violently sexually assaulting Jane "KL" Doe in a hotel room. The hotel room in question was one of the rooms provided to the athletes by Nike and NSAF.

6. Defendants Nike and NSAF negligently planned and operated the Nike Elite Program in a manner that allowed the assault of Jane "KL" Doe to take place resulting in serious bodily and psychological injury to Jane "KL" Doe.

## PARTIES, JURSIDICTION AND VENUE

7. Plaintiff, Jane "KL" Doe, along with her parents/guardians Jane Doe and John Doe

are residents of California.

8. Defendant, Nike is incorporated in the State of Oregon with its principal place of business and residence in Beaverton, Oregon.

9. Defendant, NSAF is a Massachusetts not-for profit corporation incorporated in the State of Massachusetts with its principal place of business and residence in Westwood, Massachusetts. NSAF, while operating independently, also acted as an agent of Nike and all the acts of NSAF agents were done in the course and scope of their agency as with and for Nike and said acts were done at and for the benefit of Nike.

10. This District Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds $75,000 and is between citizens of different states.

11. Venue is proper in this District Court pursuant to 28 U.S.C. §1391(b)(1) and 28 U.S.C. §1391(b)(2) because all events and omissions giving rise to this claim occurred in this district.

## FACTUAL ALLEGATIONS

### A. The Nike Elite Program for track and field.

12. Defendant Nike is a multinational conglomerate primarily engaged in the manufacturing and retailing of sporting gear, including shoes, clothing, and other sporting materials.

13. Nike sponsors famous athletes and pays athletes to endorse the Nike brand which in turn increases their sales.

14. In addition, Nike engages in the advancing and fostering of young athletes with the purpose of those athletes becoming famous and successful.

15. Specifically, Nike does this through its Nike Elite Program, which Nike operates with National Scholastic Athletics Foundation, NSAF.

16. NSAF, is a non-profit foundation, that seeks to inspire and empower young student athletes to reach their full potential through guidance, mentorship and opportunity.

17. The Nike Elite Program webpage, https://nikeelite.runnerspace.com/, describes the program as follows:

> The Nike Elite Program is a groundbreaking program designed to empower 40 of the nation's top high school track and field athletes—20 male and 20 female—across sprints, hurdles, throws, jumps, middle distance, and distance events. This one-of-a-kind experience provides comprehensive support, ensuring that the next generation of the sport has the tools, mentorship, and competition opportunities needed to reach their full potential.

18. The website also claims that:

> As part of this elite program, each athlete will receive:
>
> **Guidance:** Receive holistic mentorship from renowned event experts offering guidance on recruiting, event strategy and tactics, competitions, training, and personal development…
>
> **Sports Performance Tools:** Access to world-class medical, nutrition, and sports psychology resources…
>
> **Mentorship:** Engage with former Nike Elite Program athletes and professional Nike athletes to gain insights and inspiration from many of the world's best athletes…[and]
>
> **Equipment:** Be equipped with Nike's cutting-edge footwear and apparel innovations for training and competition and lifestyle.

19. The website further promises that participation in this Nike Elite Program provides: "[S]upport to compete at premier events… [and a] [b]uilt-in community of peers, Olympians, and experts, designed to optimize your personal development."

**B. The Nike Elite Program track and field camp, July 2026.**

20. Jane "KL" Doe is a 16-year-old multi-sport athlete who excels at track and field, in addition to excelling academically.

21. As a result of her athletic and academic success, Jane "KL" Doe, was invited to participate in the Nike Elite program by Nike and NSAF.

22. Over the weekend of July 4th, 2026, Jane "KL" Doe was invited to attend a multi-day track and field camp run by Nike and NSAF for the Nike Elite Program.

23. Jane "KL" Doe and her parents were excited to have the 'Nike experience' at the Nike Elite Program camp over the fourth of July weekend.

24. Nike and NSAF provided Jane "KL" Doe and one of her parent's airfare and accommodations at the AC Hotel for the weekend.

25. Nike and NSAF did not provide travel or accommodations for the parents of student athletes over the age of 16 at the camp.

26. Not all student athletes present had a parent/guardian with them at the Nike Elite Program event.

27. Assailant's parent(s) or guardian(s) were not present at the camp nor at the AC Hotel.

28. At the AC Hotel parents and student athletes were roomed on separate floors.

29. During the program, student athletes of both sexes were kept on the same floor near each other.

30. Throughout the course of the weekend, parents in attendance were provided with a separate itinerary from their student athlete children. As a result, the student athletes were primarily under the care, supervision, and control of the Nike and NSAF during the course of the camp

**C. <u>Reliance on Nike and NSAF regarding the safety of Jane "KL" Doe and other student athletes attending the July 2026 Nike Elite Program</u>.**

31. Prior to agreeing to send their daughter to the Nike Elite Program, Jane Doe and John Doe were assured by Nike and NSAF that they would provide sufficient and competent staff members to chaperone and oversee the student athletes.

32. Jane "KL" Doe's parents were assured that the athletes would be kept safe and that security would be provided.

33. Jane Doe and John Doe reasonably relied on Nike and NSAF to monitor the athletes and maintain a safe environment based on Nike and NSAF's representations.

**D. <u>Jane "KL" Doe's Nike Experience</u>.**

34. Jane "KL" Doe's first few days at the Nike Elite Program event were filled with track and field practice; coaching and mentoring from elite Nike athletes; and photography sessions in Nike gear. The photographs were made available to Jane "KL" Doe and were used on the Nike Elite Program website.

35. From early in the morning until after light's out, Jane "KL" Doe was largely under the care and supervision of Nike and NSAF camp staff.

36. At some point during the program the assailant befriended Jane "KL" Doe.

37. It was later learned that Assailant had disciplinary issues and was in the process of being expelled from the program. Jane "KL" Doe and her parents were not aware of the issues with assailant, and Nike and NSAF did not advise or warn Jane "KL" Doe or her parents. Nike and NSAF did not warn any of the other athletes nor their parents of the issues with assailant.

38. Nike and NSAF staff members had a duty to the athletes and parents to take corrective action with regard to assailant and failed to do so.

**E. <u>Sexual assault of Jane "KL" Doe</u>.**

39. On the evening of July 5, 2026, at approximately 10 P.M., several of the other

student athletes along with assailant and Jane "KL" Doe, were gathered and talking in a hotel room.

40. Initially there were multiple student athletes present in the hotel room. Soon all but Jane "KL" Doe and the assailant left the room.

41. Once alone, assailant began pressuring Jane "KL" Doe for sexual favors.

42. Jane "KL" Doe repeatedly denied assailant's advances, stating she did not want to engage in any sexual activities.

43. Before Jane "KL" Doe could leave the room, the assailant forcibly and without provocation violently raped and sexually assaulted Jane "KL" Doe.

44. Jane "KL" Doe attempted to scream for help but was forcibly choked by the assailant, who also covered her mouth with his hand.

45. The assault left blood stains on the hotel bed and all over the room. These stains were witnessed by several members of Nike and NSAF's staff following the assault.

46. After assaulting Jane "KL" Doe, assailant allowed Jane "KL" Doe out into the hallway where she was later found crying by Nike and NSAF staff.

47. Nike and NSAF staff then moved Jane "KL" Doe into a staff member's hotel room where she was held, without access to her parents for up to 30 minutes. She was then urged to say that the attack was consensual and was required to make a written statement.

48. Eventually, Nike and NSAF staff summoned Jane Doe, and brought her to Jane "KL" Doe.

49. When Jane Doe arrived, assailant, who was nearby, was heard repeatedly saying he was "sorry."

**F. Nike and NSAF's handling of the sexual assault on Jane "KL" Doe.**

50. At some point after reuniting Jane "KL" Doe with her mother, Jane Doe, Nike and NSAF staff placed Jane "KL" Doe and her parents in a conference room, where they were joined by several staff members.

51. After being made aware of the written statement given by their daughter, Jane "KL" Doe's parents were not allowed to review or read her daughter's statement prior to it being seized by Nike and NSAF staff.

52. At no point on the night of July 5, 2026, did Nike or NSAF staff inform Jane Doe's parents that she had been sexually assaulted.

53. Jane "KL" Doe told her mother what occurred the following morning.

54. When Jane Doe confronted Nike and NSAF staff with what her daughter had revealed, staff attempted to discredit Jane "KL" Doe's claims, inferring that the relationship with assailant was consensual.

55. Nike and NSAF staff urged Jane "KL" Doe and her parents to say the attack was consensual and aggressively requested that the family not contact law enforcement.

56. Despite Nike and NSAF's attempts to deny and hide this horrific attack, Jane Doe contacted the Beaverton Police Department and reported the rape. Jane "KL" Doe was then taken to a local hospital where she was treated for her neck injuries, her gynecological injuries as well as for an investigative rape victim assessment.

57. Assailant was then expelled from the program and physically sent home to Texas, making him unavailable to the Beaverton Police Department. At this point, criminal charges are pending against the assailant.

58. Jane "KL" Doe finished out her time at the Nike Elite Program camp and returned

home to California on July 7, 2026.

59. The remainder of Jane "KL" Doe's time at the Nike Elite Program camp was fraught with tension, anxiety, and distress as her and her family were ostracized by Nike and NSAF staff after making a police report regarding the assault.

60. No one from Nike or NSAF contacted Jane "KL" Doe or her family for weeks to check in on her status post-assault.

## COUNT I

## Negligence Against Nike

61. Plaintiffs restate and reallege each of the previous paragraphs of this Complaint as if fully set forth herein.

62. At all times material, Nike had a special relationship with Jane "KL" Doe, acting directly or through its agent NSAF to provide safety, care, and protection for her while she was at the Nike Elite Program and at the AC Hotel, when she was not under the supervision of her parents.

63. At all times material, Defendant Nike had a duty to protect all of its athlete-participants, and to provide and maintain the hotel and all related events in a reasonably safe condition, to prevent dangerous conditions known or reasonably known, and to exercise reasonable care to protect the Plaintiffs from foreseeable risks of attack or assaults.

64. At all times material, Defendant Nike negligently and carelessly breached said duty in that it failed to do one or more of the following ways:

a. Failed to provide an adequate number of properly trained chaperones and trained personnel to protect these young minors, including, JANE "KL" DOE, from foreseeable dangers;

b. Failed to prevent a foreseeable criminal attack by assailant after being placed

on notice in advance of assailant's behavioral issues.

c. Failed to properly/adequately patrol the hallways and rooms and to protect its athletes, including Plaintiff, JANE "KL" DOE, from foreseeable dangers;

d. Failed to properly monitor the premises to prevent criminal attacks from occurring;

e. Failed to have a safety plan including monitoring of all its minor student athletes, including Plaintiff, JANE "KL" DOE, from foreseeable dangers;

f. Failed to prevent the violent attack on Plaintiff, Jane "KL" Doe; and/or

g. Failed to come to the aid of Plaintiff, failed to provide immediate medical care but rather attempted to coerce JANE "KL" DOE into saying the attack did not occur or that attack was a consensual encounter, failed to oversee its agent NSAF's organization, planning, and running of the Nike Elite Program

65. As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Plaintiff, JANE "KL" DOE, sustained physical and extreme psychological injuries, which resulted in pain and suffering, disability, disfigurement, scarring, mental anguish, loss of ability to earn money in the future, and past and future medical and related expenses all of which are continuing and/or permanent in nature.

66. As a direct and proximate result of Defendant's conduct and the above-described injuries, Plaintiff was required to employ the services of doctors, nurses, hospital staff, and other healthcare providers for medical examinations, treatment, and care. Plaintiff has incurred past medical expenses and will reasonably future medical expenses the exact amount to be proven at trial.

67. As a direct and proximate result of Defendant's conduct, Plaintiff sustained

physical and emotional injuries Plaintiff required and received medical treatment for these injuries. The injuries and their consequences caused Plaintiff to suffer noneconomic damages, including past and future pain and suffering, extreme emotional trauma, loss of her innocence, humiliation, inconvenience, and interference with normal activities, in the amount to be proven at trial.

68. Plaintiff also requests that punitive damages be awarded against each party individually for their reckless and indifferent actions before and after the assault on Jane “KL” Doe in an amount to be proven at trial.

**Count II**

**Negligence Against NSAF**

69. Plaintiffs restate and reallege each of the previous paragraphs of this Complaint as if fully set forth herein.

70. At all relevant times, Defendant NSAF was acting directly and/or in coordination with or at the direction of Nike in the sponsoring, planning, and running of the Nike Elite Program in which Jane “KL” Doe was a participant. In addition NSAF staff were acting as agents of Nike at all times during the Nike Elite Program.

71. At all times material, NSAF had a special relationship with Jane “KL” Doe, to provide safety, care, and protection for her while she was at the Nike Elite Program and at the AC Hotel, when she was not under the supervision of her parents.

72. At all times material, NSAF had a duty to protect all of its athlete-participants, and to provide and maintain the hotel and all related events in a reasonably safe condition, to prevent dangerous conditions known or reasonably known, and to exercise reasonable care to protect the Plaintiffs from foreseeable risks of attack or assaults.

73. At all times material, NSAF negligently and carelessly breached said duty in that it

failed to do one or more of the following ways:

a. Failed to provide an adequate number of properly trained chaperones and trained other personnel to protect these young minors, including, JANE "KL" DOE, from foreseeable dangers;

b. Failed to prevent a foreseeable criminal attack by assailant after being placed on notice in advance of assailant's behavioral issues.

c. Failed to properly/adequately patrol the hallways and rooms and to protect its athletes, including Plaintiff, JANE "KL" DOE, from foreseeable dangers;

d. Failed to properly monitor the premises to prevent criminal attacks from occurring;

e. Failed to have a safety plan including monitoring of all minor student athletes, including Plaintiff, JANE "KL" DOE, from foreseeable dangers;

f. Failed to prevent the violent attack on Plaintiff, Jane "KL" Doe;

g. Failed to come to the aid of Plaintiff, failed to provide immediate medical care but rather attempted to coerce Jane "KL" Doe into saying the attack did not occur or that attack was a consensual encounter; Failed to oversee its agents as well as Nike's in the organization, planning, and running of the Nike Elite Program.

74. As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Plaintiff, JANE "KL" DOE, sustained physical and extreme psychological injuries, which resulted in pain and suffering, disability, disfigurement, scarring, mental anguish, loss of ability to earn money in the future, and past and future medical and related expenses all of which are continuing and/or permanent in nature.

75. As a direct and proximate result of Defendant's conduct and the above-described injuries, Plaintiff was required to employ the services of doctors, nurses, hospital staff, and other healthcare providers for medical examinations, treatment, and care. Plaintiff has incurred past medical expenses and will reasonably future medical expenses the exact amount to be proven at trial.

76. As a direct and proximate result of Defendant's conduct, Plaintiff sustained physical and emotional injuries Plaintiff required and received medical treatment for these injuries. The injuries and their consequences caused Plaintiff to suffer noneconomic damages, including past and future pain and suffering, extreme emotional trauma, loss of her innocence, humiliation, inconvenience, and interference with normal activities, in the amount to be proven at trial.

77. Plaintiff also requests punitive damages be awarded against each party individually for their reckless and indifferent actions before and after the assault on Jane "KL" Doe in an amount to be proven at trial.

**COUNT III**

**Negligent Hiring, Training, Retention, and Supervision Against Nike**

78. Plaintiffs restate and reallege each of the previous paragraphs of this Complaint as if fully set forth herein.

79. Plaintiffs restate and reallege each of the previous paragraphs of this Complaint as if fully set forth herein.

80. Nike invited Jane "KL" Doe, victim to attend the Nike Elite Program.

81. Nike assumed a duty to retain a qualified chaperone to stand in loco parentis for the victim's health, safety, and welfare during the times that victim was not with her parents.

82. Defendant Nike, its officers, directors, supervisors, managers, agents and/or

employees, knew or in the exercise of reasonable care, should have known that individuals monitoring the athletes were incapable of chaperoning the Nike Elite Program athletes at the AC Hotel in Beaverton.

83. Defendant Nike, its officers, directors, supervisors, managers, agents and/or employees, failed to train or otherwise prepare the designated individuals that were acting as chaperones and overseeing the athletes at the AC Hotel in Beaverton.

84. Defendant Nike, its officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that the individuals monitoring the athletes and acting as chaperones whether Nike employees or NSAF employees were negligent in their supervision of the Nike Elite Program athletes.

85. Defendant Nike, its officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that the Nike Elite Program athletes, including the Jane "KL" Doe, would be subjected to unnecessary dangers and harm by not retaining capable chaperones to stand in loco parentis for the Plaintiff Jane "KL" Doe and the other athletes.

86. As a direct and proximate result of the foregoing, Plaintiffs suffered damage and injuries as alleged above.

**COUNT IV**

**Loss of Consortium Against Nike and NSAF**

87. Plaintiffs restate and reallege each of the previous paragraphs of this Complaint as if fully set forth herein.

86. Plaintiffs Jane Doe and John Doe are the parents of victim Jane "KL" Doe.

87. By virtue of the acts described in this Complaint, Plaintiffs Jane Doe and John Doe

lost the parental consortium of their minor child, sustained economic losses in the form of travel expenses and treatment costs, and suffered serious and extreme emotional distress.

WHEREFORE, Plaintiffs demand judgment for compensatory damages including economic and non-economic damages, punitive damages against NIKE and NSAF as well as costs, interest and attorney's fees to the extent allowed by law, and demand trial by jury of all issues so triable.

LAW OFFICES OF GOLDBERG & LOREN, P.A

/s/ *George Goldberg*

George Z. Goldberg, OSB No. 182452
E-mail: pleadings@goldbergloren.com
Matthew Kaufmann, OSB No. 212749
E-mail: mkaufmann@goldbergloren.com
E-mail: pleadings@goldbergloren.com
6500 S. Macadam Ave, Suite 380
Portland, Oregon 97239
(800) 719-1617